# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

| | | |
|---|---|---|
| **DAVID PEYTON,** | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| | ) | 1:24-cv-21649-BB |
| v. | ) | |
| | ) | |
| **ERIC K. GRANT,** | ) | |
| | ) | |
| Defendant. | ) | |

### EXPEDITED MOTION FOR PRELIMINARY INJUNCTION

David Peyton hereby files this expedited motion for preliminary injunction, pursuant to Local Rule 7.1(d)(2), against Eric K. Grant seeking the appointment of receivers for two companies owned by the Parties, and to enjoin the Parties from making waste with regard to said companies, as follows.

### DISCUSSION

On or about February 18, 2019, Mr. Peyton and Mr. Grant executed a shareholder agreement governing their joint ownership of Nexxt Gen Corporation ("Nexxt Gen"), a Florida Corporation, under which each would own one-third of Nexxt Gen along with partner David Martinez ("Shareholder Agreement"). *See Verified Complaint*, ¶ 8. Section 25 of the Shareholder Agreement states that the Shareholder Agreement shall be "governed by and construed under the laws of the State of Florida." *VC*, ¶ 9. Section 25 further states that the "parties hereby

irrevocably and unconditionally submit to the jurisdiction of the Courts of the State of Florida and of the United States of America for the Southern District of Florida and agree that **any legal action or proceeding relating to this Agreement** may be brought in such courts" (emphasis supplied). *VC*, ¶ 10. Pursuant to Section 8(d) of the Shareholder Agreement, as of the date of execution, each of Mr. Grant, Mr. Martinez and Mr. Peyton owned exactly one-third of Nexxt Gen. *VC*, ¶ 11.

At this point, the Parties agreed that Mr. Peyton would serve as Chief Technology Officer, Mr. Martinez would serve as Chief Operations Officer, and Mr. Grant would serve as Chief Executive Officer and Chief Financial Officer for Nexxt Gen, and Mr. Grant holds himself out publicly as the Chief Executive Officer and Chief Financial Officer of Nexxt Gen. *VC*, ¶ 12.

Since Nexxt Gen had been founded by Mr. Grant, Mr. Grant agreed to issue share certificates for Nexxt Gen to both Mr. Peyton and Mr. Martinez. *VC*, ¶ 13. Mr. Grant never did so. *VC*, ¶ 14.

Mr. Grant further failed to add Mssrs. Peyton and Martinez to Nexxt Gen's bank accounts (adding them as signers of one of four bank accounts, but not listing them as owners of any). *VC*, ¶ 15. Instead, Mr. Grant listed his close family members, including his wife Christine Grant, sister Deborah Grant, mother Arlene Grant, and recently deceased father Ronald Grant (who was the original owner of Nexxt Gen) to the corporate bank accounts. *VC*, ¶ 16.

Mr. Grant, as Chief Financial Officer, took on and agreed to the role of handling Nexxt Gen's tax returns. *VC*, ¶ 17. Mr. Grant filed a fraudulent tax return for the 2019 tax year. *VC*, ¶ 18. Mr. Grant has also failed to file corporate tax returns and to issue Schedules K-1 for the 2020, 2021, and 2022 tax years (and he has not sought an extension for late filing of the 2023 tax year). *VC*, ¶ 19.

These inadequate tax filings have led to an IRS audit of Mr. Peyton's individual income tax returns (filed married filing jointly, and as a consequence impacting Mr. Peyton's wife), which is currently being handled by the Bomar Law Firm, LLC ("Bomar") in Atlanta, Georgia. *VC*, ¶ 20. Mr. Grant has been uncooperative with the audit process, refusing to provide Bomar with a copy of the Quickbooks files for Nexxt Gen and other necessary data. *VC*, ¶ 21.

Complicating the matter, Mr. Grant and Mr. Peyton each own fifty percent (50.00%) of another company called Redquore, LLC in Texas. *VC*, ¶ 22. Redquore, LLC owns Holliday Process Solutions, LLC in Richland Hills, Texas ("HPS"). *VC*, ¶ 23. As a consequence, of their joint ownership of Redquore, LLC, Mr. Grant and Mr. Peyton each own fifty percent (50.00%) of HPS. *VC*, ¶ 24. Mr. Martinez does not own any portion of HPS whatsoever and is not involved with HPS. *VC*, ¶ 25.

Despite the inconsistency of ownership, and directly adverse to Mr. Peyton's demands to the contrary, Mr. Grant has spent hundreds of thousands of dollars

3

from Nexxt Gen accounts to HPS accounts and has used Nexxt Gen funds to pay for HPS expenses regularly. *VC*, ¶ 26. Mr. Grant has also paid employees of Nexxt Gen to perform work for HPS using Nexxt Gen funds without authorization from Mr. Martinez or Mr. Peyton. *VC*, ¶ 27. Mr. Grant routinely utilizes Nexxt Gen contractors and employees to perform work and/or services for HPS. *VC*, ¶ 28.

This is in direct contrast to Section 8(c)(v) of the Shareholder Agreement, which reserves the authority to "otherwise dispose of any and/or all assets or interests" of Nexxt Gen "with any Person, Corporation, limited liability company or any other entity" without the "unanimous vote or written consent of the shareholders." *VC*, ¶ 29. Similarly, Section 8(c)(vi) requires that the shareholders designate the accounts at which all Nexxt Gen funds must be deposited, and that all "transactions above $5000.00 therefrom are to be made upon checks required to be signed by **both** David Peyton and Eric Grant" with the exception of financial transactions made by the company finance department (emphasis supplied). *VC*, ¶ 30.

Sections 8(c)(x) and (xiv) further restrict to a unanimous decision of the shareholders the expense of $2,000.00 or more for a capital expenditure for real or personal property and for debted services. *VC*, ¶ 31. Mr. Peyton has reviewed some of the banking transactions within Nexxt Gen's Chase checking account

ending in ***5716 and has identified at least $418,000.00 of transfers directly to, or expenses paid directly for the benefit of, HPS without authorization from Mr. Martinez or Mr. Peyton. *VC*, ¶32. Mr. Peyton has reviewed some of the banking transactions within Nexxt Gen's Chase credit card account ending in ***3298 which reflected numerous transactions for the direct benefit of HPS. *VC*, ¶ 33. Mr. Peyton also reviewed the Nexxt Gen American Express card ending in ***01004 year end summary for 2023, and found dozens of transactions on behalf of HPS in the amount of tens of thousands of dollars. *VC*, ¶ 34.

Mr. Grant has also established a pension plan, known to be held by at least TD Ameritrade and Charles Schwab, where he has stored well over a million dollars of funds siphoned from Nexxt Gen that he obfuscated from Mr. Peyton and now refuses to allow Mr. Peyton access to. *VC*, ¶ 35. Mr. Grant siphoned $200,000.00 from the Chase checking accounts on December 28, 2023 to his pension plan without authorization from Mr. Martinez or Mr. Peyton. *VC*, ¶ 36.

Section 8(e)(i) of the Shareholder Agreement requires Mr. Grant to allow Mr. Peyton access to the corporate books at all times. *VC*, ¶ 37. Nonetheless, Mr. Grant openly maintains at least three separate sets of books within Quickbooks, but has only granted Mr. Peyton to two of the at least three sets, and none at all until January of 2023. *VC*, ¶ 38.

When challenged, Mr. Grant has repeatedly reacted aggressively and petulantly, cutting off Mr. Peyton's access to company emails, bank accounts and credit cards, and has not yet fully restored access. *VC*, ¶ 39. This has forced Mr. Peyton to utilize personal cards to pay for Nexxt Gen expenses, at the risk of non-reimbursement. *VC*, ¶ 40.

Mr. Grant has even been so petty as to change the locks on Nexxt Gen's Dallas, Texas warehouse, without Mr. Peyton's knowledge or consent, and refused to provide Mr. Peyton with a key. *VC*, ¶ 41. The warehouse holds several million dollars worth of equipment which is needed to operate both Nexxt Gen and HPS. *VC*, ¶ 42.

On April 24, 2024, Mr. Peyton visited with Chase Bank to review the state of the Nexxt Gen accounts. *VC*, ¶ 43. Mr. Peyton learned that Mr. Grant had removed him from all of the accounts as an owner, had left him as a signatory on a single account, and that Nexxt Gen had several accounts for which Mr. Peyton had never been provided with any records whatsoever, including a secret account that contained roughly $99,000.00 that Mr. Peyton was not privy to. *VC*, ¶ 44. Mr. Grant's family, Arlene Grant, Deborah Grant, Christine Grant and Ronald Grant are all listed on the account. *VC*, ¶ 45. This "secret account" may be related to Mr. Grant's colleague Matt Carter and a former subsidiary purchase of Nexxt Gen, Milinex. *VC*, ¶ 46.

Mr. Grant's antics have resulted in several forms of damages. *VC*, ¶ 47. First, a good number of valued employees of Nexxt Gen have threatened to resign or have resigned stating that Mr. Grant's erratic and childish conduct has created a severely unpleasant work environment. *VC*, ¶ 48. This includes the lead engineer for Nexxt Gen, who resigned on April 22, 2024. *VC*, ¶ 49.

Second, Mr. Grant's conduct transferring assets to or paying expenses for HPS has exposed Mr. Peyton to suit by Mr. Martinez who does not own any portion of HPS. *VC*, ¶ 50. For example, on April 22, 2024, Mr. Grant caused Nexxt Gen to transfer $20,000.00 to his mother, Arlene Grant, who does not work at Nexxt Gen in any capacity without authorization from Mr. Peyton or Mr. Martinez. *VC*, ¶ 51. Likewise, as of the date of filing, immediately prior to April 30, 2024 payroll which is roughly $30,000.00 per month, the Nexxt Gen accounts have roughly $2,000.00 available due to transfers of this kind. *VC*, ¶ 52.

Third, the IRS is currently investigating Nexxt Gen, and is auditing Mr. Peyton, and is considering imposing substantial backup withholdings in the realm of $500,000.00 against Nexxt Gen. *VC*, ¶ 53. This is in part due to the fact that Mr. Grant had failed to go to the office (twenty minutes from his home in Texas) to open mail from the IRS. *VC*, ¶ 54. Mr. Peyton visited the office from Georgia to find more than a year's worth of unopened letters from the IRS. *VC*, ¶ 55. This is

also in part because Mr. Grant has used his brother-in-law, Bill Henson of Plante Moran to impose improper tax advice. *VC*, ¶ 56.

Fourth, Mr. Grant continues to make waste and to undercapitalize Nexxt Gen in favor of HPS which renders it difficult to operate and manage Nexxt Gen. *VC*, ¶ 57. Nexxt Gen runs its payroll semi-monthly, on the 15th and 30th days of each month. *VC*, ¶ 58. Mr. Grant's regular undercapitalization of Nexxt Gen has forced Mr. Peyton to find alternative means of funding payroll for Nexxt Gen and to pay for expenses of Nexxt Gen on extremely short notice (often less than 24 hours). *VC*, ¶ 59. This has also forced Mr. Peyton to cease taking any distributions from Nexxt Gen to try to keep it afloat despite the fact that Nexxt Gen is earning substantial revenues. *VC*, ¶ 60.

Finally, Mr. Grant has siphoned considerable sums of money from Nexxt Gen to his pension fund without approval of Mssrs. Peyton and/or Martinez. *VC*, ¶ 61. Mr. Grant's conversions and fraudulent transfers to HPS, and his obfuscation of corporate books from Mr. Peyton constitute willful malfeasance. *VC*, ¶ 62. Mr. Peyton now seeks injunctive relief to appoint a receiver to Nexxt Gen and HPS to step into the role of Chief Financial Officer while Nexxt Gen and HPS can be wound up or the situation rectified, and to prevent any further waste by Mr. Grant. *VC*, ¶ 63.

A district court may grant injunctive relief if the movant shows the following: (1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998).

Mr. Grant has been looting the accounts of Nexxt Gen to fund HPS, his own pockets, and his pension funds, on a regular basis to the point at which Nexxt Gen is experiencing major difficulties in operating. Mr. Grant has been absolutely dilatory in the preparation of tax returns, and has filed 2019 fraudulent per the advice of his brother-in-law, Mr. Henson. Mr. Grant has also been driving away employees of Nexxt Gen, and utilizing Nexxt Gen employees for HPS. None of this has been done with the consent of Mr. Peyton, or importantly, Mr. Martinez. Allowing Mr. Grant to continue running the companies without oversight will cause Mr. Peyton to suffer irreparable harm.

This Court appointing a receiver for Nexxt Gen and HPS, and Ordering both Parties to not make further waste, will not result in any harm to Defendants. The greatest potential harm that Mr. Grant could suffer would be the shared cost of the receiver, but the benefit of having the accounts cleaned up, the corporate books

consolidated from three sets to one, and generally resolving the corporate finances will actually improve the status of the companies and be well worth the investment.

Mr. Peyton is certain to prevail on the merits against Mr. Grant. No element of this matter has any meaningful impact on the public interest, and therefore, granting the sought-after injunction will not disserve the public interest. An interlocutory preliminary injunction appointing a receiver for Nexxt Gen and HPS, and Ordering both Parties to not make further waste is appropriate.

Mr. Peyton respectfully requests that this Court Grant his Expedited Motion for a Preliminary Injunction, and hold a hearing on this issue, as soon as possible, and ideally within twenty-one (21) days, because Mr. Grant has locked Mr. Peyton out of the vast majority of company functions, and continues to make waste with regard to corporate assets. The survival of both Nexxt Gen and HPS are tightly intertwined with their ability to fund payroll and allow Mr. Peyton to operate the companies.

Respectfully submitted, this 6th day of May, 2024.

        FGP LAW, LLC

        /s/ Frank G. Podesta
        Frank G. Podesta
        Florida Bar No. 0090488
        fpodesta@fgplaw.com

        555 Sun Valley Drive
        Suite N-3
        Roswell, Georgia 30076
        678.677.5143 (voice)
        678.222.0123 (facsimile)
        *Attorneys for Mr. Peyton*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing **Expedited Motion for Preliminary Injunction** was prepared using 14 Point Times New Roman Font, and that on May 6, 2024, I filed the foregoing with the Clerk of Court, and served via same on all counsel of record via this Court's CM/ECF Electronic Filing System.

Respectfully submitted, this 6th day of May, 2024.

                                        FGP LAW, LLC

                                        /s/ Frank G. Podesta
                                        Frank G. Podesta
                                        Florida Bar No. 0090488
                                        fpodesta@fgplaw.com