UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-21649-ELFENBEIN

**DAVID PEYTON**,
*individually and as a shareholder*
*of Nexxt Gen Corporation*,

      Plaintiff,

v.

**DAVID E. MARTINEZ**,
*individually and as a shareholder*
*of Nexxt Gen Corporation*,

      Intervenor Plaintiff,

v.

**ERIC K. GRANT**, *et al.*,

      Defendants,

v.

**DAVID PEYTON**, *et al.*,

      Intervenor Plaintiff,

v.

**NEXXT GEN CORPORATION**, *et al.*,

      Counter Claimant,

v.

**DAVID PEYTON**,
*individually and as a shareholder*
*of Nexxt Gen Corporation*,

      Counter Defendant.

_____/

**ORDER ON MOTION FOR RECONSIDERATION**

      **THIS CAUSE** is before the Court on Intervenor-Plaintiff David Martinez's ("Martinez")

Objections to the Report and Recommendations on Motion for Contempt and Sanctions, *see* ECF

No. [117], which the Court construes as a Motion for Reconsideration (the "Motion"), *see* ECF No. [147].[1]  For the reasons explained below, the Motion, **ECF No. [117]**, is **GRANTED in part and DENIED in part**.

## I.     BACKGROUND

This case has a long history, which the Court has recounted in detail more than once. *See* ECF No. [112] at 2–5; ECF No. [331] at 2–8.  Because the Parties are intimately aware of the full procedural history, the Court includes only a brief recap of the relevant parts here. This action arises out of a tumultuous business relationship between Martinez, Eric Grant ("Grant"), and David Peyton ("Peyton").  *See* ECF No. [331] at 2.  It is based on a dispute between Grant, Martinez, and Peyton over the ownership of Nexxt Gen Corporation ("Nexxt Gen"), several affiliated companies, and an alleged joint venture business that purportedly preceded the Parties' rights to the formal entities.  *See* ECF No. [331] at 2–8.  That dispute led Peyton to initiate this lawsuit in April 2024. *See* ECF No. [1].

After a settlement conference the Court held for six hours over two days in June 2024, *see* ECF No. [35]; ECF No. [36], Grant, Martinez, and Peyton reached an agreement about how they would operate Nexxt Gen "while litigation is ongoing" (the "Joint Stipulation"). *See* ECF No. [36]; ECF No. [41]; ECF No. [47].  In the Joint Stipulation — which the Court thoroughly described in its R&R, *see* ECF No. [112] at 13–28 — Grant, Martinez, and Peyton agreed to modify certain

---

[1] As explained in a previous order, Martinez timely objected to the Report and Recommendation ("R&R") before the Honorable Beth Bloom adopted it.  *See* ECF No. [147].  For that reason, Martinez moved to vacate Judge Bloom's Order adopting the R&R.  *See* ECF No. [122].  Before Judge Bloom could act on the Motion to Vacate, the Parties consented to Magistrate Judge jurisdiction over the entirety of this case.  *See* ECF No. [135]; ECF No. [139].  During a December 5, 2024 status conference, the Court explained to the Parties that, because Martinez's objections ask the Court to reconsider its previous rulings in the R&R, it would treat them as a Motion for Reconsideration.  *See* ECF No. [145]; ECF No. [147].  The Court would also allow a response and a reply to the Motion for Reconsideration.  *See* ECF No. [147].  The Parties did not object to that procedure.  *See* ECF No. [147].

provisions of a February 2019 contract that purported to make them equal partners in Nexxt Gen (the "Shareholder Agreement") to require that they "make decisions" about those items "based on a two-thirds (2/3rds) vote." *See* ECF No. [41] at 2. They also agreed in the Joint Stipulation to give Martinez and Peyton certain access to Nexxt Gen's financial accounts, credit cards, and Quickbooks and to make a third-party the "primary administrator" for Nexxt Gen's Quickbooks, Information Technology, and Google systems. *See* ECF No. [41] at 2. The Court approved the Joint Stipulation in July 2024. *See* ECF No. [47].

In August 2024, Martinez and Peyton filed a Joint Motion for Contempt and Sanctions against Grant, arguing that Grant failed to comply with the Joint Stipulation ("Motion for Contempt"). *See generally* ECF No. [52]. The Court held an evidentiary hearing on the Motion for Contempt for eleven hours over two days in September 2024 (the "Hearing"), *see* ECF No. [64]; ECF No. [94]; ECF No. [98], during which it heard testimony from all three men, *see* ECF No. [94]; ECF No. [98]. The Court then issued the R&R, which recommended that the Motion for Contempt be granted in part and denied in part. *See* ECF No. [112] at 31. As explained in footnote 1 above, Martinez timely objected to the R&R, and, without objection from the Parties, the Court now construes those objections as a Motion for Reconsideration. *See* ECF No. [147].

In the Motion, Martinez asserts the Court made four errors. First, Martinez argues the Court erred when it found Martinez was terminated from Nexxt Gen and, as a result, was not due to receive salary compensation under the Joint Stipulation. *See* ECF No. [117] at 2. Second, Martinez argues the Court erred when it found that Grant's retention of counsel for Nexxt Gen and continued payment of an accountant after the entry of the Joint Stipulation did not violate section (a) of the Joint Stipulation as it modifies subsection 8(c)(xiv) of the Shareholder Agreement and, therefore, declined to hold Grant in contempt on that basis. *See* ECF No. [117] at 2. Third,

Martinez argues the Court erred when it failed to explain when the $500 contempt fine against Grant would begin accruing. *See* ECF No. [117] at 2. And fourth, Martinez argues the Court erred when it failed to state whether Martinez is entitled to recover costs and attorney's fees as the prevailing party on the Motion for Contempt. *See* ECF No. [117] at 2.

In his Response to the Motion (the "Response"), Grant contends that "reconsideration is an extraordinary remedy granted only upon a showing of exceptional circumstances." *See* ECF No. [164] at 2. He argues Martinez has not shown any of the "three major grounds justifying reconsideration" courts use when interpreting Federal Rules of Civil Procedure 59(e) and 60(b). *See* ECF No. [164] at 3–5. He notes Martinez asserts the Court erred by failing to "include a finding of contempt on an issue not raised in his motion for contempt (nor even in his reply in support of his motion for contempt)." *See* ECF No. [164] at 4. And he argues "the sole issue as to which Martinez presents a factual challenge to the Court's ruling — his contention that he was not terminated from Nexxt" Gen "as represented to this Court by Grant and Peyton — is belied by his own testimony during the hearing." *See* ECF No. [164] at 5.

In his Reply in support of the Motion (the "Reply"), Martinez contends the correct standard of review here is not one of extraordinary circumstances/extreme hardship, as Grant asserts, but instead is the one a district court judge would use if it were reviewing timely objections to an R&R: *de novo* review. *See* ECF No. [169] at 2–5. He argues the Court "overlooked" Grant's "additional violations" of the Shareholder Agreement, specifically that Martinez was terminated from two affiliated companies (Nuraxis LLC and NexxtGen, LLC), not Nexxt Gen itself, which means he is still Chief Operating Officer" ("COO") of Nexxt Gen because "there was never a vote or formal termination of his role." *See* ECF No. [169] at 6. He acknowledges he did not include his argument about Grant's hiring of counsel after the Joint Stipulation without a two-thirds approval in the

4

Motion for Contempt, but he argues precedent gives the Court discretion to consider it anyway. *See* ECF No. [169] at 6–7. He reiterates that the Court "overlooked, when assessing the fine against Grant," establishing "an accruing date for the fine and other details as to the payment," as well as to decide whether "fees and costs [are] warranted to Martinez for bringing the Motion for Contempt." *See* ECF No. [169] at 7. He asks the Court to "determine that Grant is obligated to pay his contempt fee sanction of $500 per day to the Court, accrued from the date that the Court Order approv[ed] the Joint Stipulation (namely July 2, 2024) plus interest." *See* ECF No. [169] at 3. And he argues Grant waived his right to challenge the purpose of the $500 per day sanction — that is, whether it is only coercive or also "punitive or compensatory" — because Grant did not file his own objections to the R&R or file a response to Martinez's objections. *See* ECF No. [169] at 7–8. The Motion is now ripe for review.

## II. LEGAL STANDARDS

For many years, this Circuit's precedents were "less than clear about what standard of review district courts should employ when faced with" a Motion for Reconsideration "in the context of a non-final order." *Hornady v. Outokumpu Stainless USA, LLC*, 118 F.4th 1367, 1379 (11th Cir. 2024). Recently, however, the Eleventh Circuit clarified that the "answer" is Federal Rule of Civil Procedure 54(b), "which governs a district court's reconsideration of interlocutory orders."[2] *See id.* In *Hornady*, the Court explained that under Rule 54(b) "district courts retain

---

[2] Before this clarification, many district courts used the standards applicable to motions for reconsideration of final orders or final judgments, which required the moving party to "demonstrate why the court should reconsider its prior decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision" by "rais[ing] new issues, not merely address[ing] issues litigated previously." *See, e.g.*, *Socialist Workers Party v. Leahy*, 957 F. Supp. 1262, 1263 (S.D. Fla.1997) (quotation marks omitted); *Instituto de Prevision Militar v. Lehman Bros.*, 485 F. Supp. 2d 1340, 1343 (S.D. Fla. 2007) (noting three "major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or manifest injustice" (quotation marks omitted)); *cf. Hornady*, 118 F.4th at 1379 (noting that the standards of Rule 59(e) and Rule 60(b) "do not apply" to motions for reconsideration of non-final orders because those Rules "come into play"

plenary power to reconsider an interlocutory order before the entry of final judgment." *Id.*; *see also* Fed. R. Civ. P. 54(b) (explaining that an order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities").  For that reason, when "a district court enters a non-final order, it should evaluate motions to reconsider that order under the standards inherent in Rule 54(b) — plenary authority to reconsider, revise, alter or amend a non-final order before the entry of final judgment." *Hornady*, 118 F.4th at 1379–80 (quotation marks omitted).

Still, while district courts "enjoy plenary *power* to reconsider non-final rulings, they need not employ plenary *review* when doing so." *Id.* at 1380 (emphasis in original).  "[I]n most instances district courts should hesitate before revisiting their earlier interlocutory order" because "important interests of finality, stability, and predictability" underlie "justifiable caution." *Id.*  The "district court's decision to reconsider an interlocutory order" is "committed to its sound judgment," though the court should use the law-of-the-case doctrine as a guide because it "expresses the practice of courts generally to refuse to reopen what has been decided." *See id.* (quotation marks omitted) (noting that the law of the case doctrine operates "with more or less force depending on the stage of litigation" and encourages courts to adhere to "the general point that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case" (quotation marks omitted)).

That is why it is not enough for a movant to "simply rehash[] arguments already considered and rejected" and why "the more time that has passed between a district court's ruling and a party's motion to reconsider that ruling, the less willing the court ought to be to entertain the party's

---

only "after a final, appealable judgment is entered").

request." *See id.* at 1381 (noting that parties must "be able to rely on the rulings that progressively direct proceedings toward trial"). Ultimately, "[c]ommon sense, not a rigid set of rules, governs." *See id.* at 1380–81 (quotation marks omitted).

Even so, if the movant can "meet a significantly higher showing for reconsideration — for example, the standards applicable to Rules 59(e) or 60(b), or the exceptions to the mandate rule — the district court should not hesitate to revisit its prior ruling." *Id.* at 1381. "But just because a movant fails to meet these higher standards does not mean that reconsideration cannot be had — the district court may still have room to conclude that reconsideration is appropriate." *Id.* "In short, district courts have discretion to revisit their prior interlocutory orders, considering both the weight of the moving party's arguments and the disruption that a change would cause in light of the time that has passed since the decision was initially made." *Id.*

### III. DISCUSSION

Before turning to the merits of the Motion, the Court first must determine what standard of review applies. The Parties offer competing options: Grant suggests the significantly more demanding "extraordinary circumstances" test that applies to reconsideration under Rules 59 and 60, while Martinez suggests the "*de novo*" standard that applies to timely objections to an R&R. As the legal standards discussion above makes clear, however, the correct answer is neither of those.

Instead, as the Eleventh Circuit clarified in *Hornady*, the appropriate standard of review for a trial court's reconsideration of non-final rulings, like this one, is found in Rule 54(b), which gives the Court "plenary authority to reconsider, revise, alter or amend a non-final order before the entry of final judgment." 118 F.4th at 1379–80 (quotation marks omitted). But the Court has discretion over whether to "revisit" its interlocutory orders, and when exercising that discretion,

7

"[c]ommon sense, not a rigid set of rules, governs." *See id.* at 1380–81 (quotation marks omitted). Here, the Court chooses to revisit the R&R,[3] and will, as the Eleventh Circuit instructs, consider "both the weight of" Martinez's "arguments and the disruption that a change would cause in light of the time that has passed since" the R&R issued. *See id.* at 1381.

### A. Whether Martinez Remains COO of Nexxt Gen and is Entitled to Salary

Martinez contends that, "according to documents discovered recently in this litigation," he was not terminated from Nexxt Gen, as Grant and Peyton testified, but instead from Nuraxis, which means he "continues to be" Nexxt Gen's COO and "should be compensated accordingly." *See* ECF No. [117] at 2, 5. He argues that, as a result, when he and Peyton voted post-Joint Stipulation to pay themselves salaries, Grant became "obligated to pay Martinez" just like the Court found Grant was obligated to pay Peyton. *See* ECF No. [117] at 5–6. The Court disagrees.

Although Martinez asserts it was Grant and Peyton who "repeatedly falsely represented to this Court that Martinez was terminated from Nexxt" Gen, *see* ECF No. [117] at 2, 5–6, that is not the whole story. During his direct examination, Martinez was asked by his own lawyer to "give us the time in which you worked for Nexxt Gen corporation and the time you were out and the time you resumed." *See* Hr'g Tr., 93, Sept. 6, 2024. And Martinez answered: "So actually, I was the chief operating officer for Nexxt Gen through October 2021. Which [at] that time, I was removed as you heard Mr. Peyton, from '21 until March [2024], David Peyton, Eric Grant had maintained control of the Nexxt Gen company, and then from March '24 . . . it was Eric Grant that had primary control." *See* Hr'g Tr., 93–94, Sept. 6, 2024. What that testimony shows is Martinez himself interpreted his October 2021 ouster to be from Nexxt Gen and, as of the Hearing, believed

---

[3] As explained above, the Court advised the Parties that, because they consented to Magistrate Judge jurisdiction before a ruling on Martinez's objections, it would treat the R&R as an Order and the objections as a Motion for Reconsideration of that Order. *See* ECF No. [147].

8

he had ceased being Nexxt Gen's COO. The Court based its R&R on the evidence presented at the Hearing, and that evidence — from Martinez's own mouth — supports the Court's finding that he was removed from Nexxt Gen in October 2021. *See* ECF No. [112] at 15; Hr'g Tr., 93–94, Sept. 6, 2024.

Martinez fails to acknowledge that his Hearing testimony was consistent with that of Grant and Peyton, but he implies as much by arguing that *recently discovered* documents revealed to him that he was removed from Nuraxis, not Nexxt Gen. *See* ECF No. [117] at 2, 5. He attaches to the Motion an October 2021 document that appears to be minutes from a "Nuraxis LLC Emergency Executive Session," during which "the Nuraxis LLC and subsidiaries board of directors" voted "to terminate all current employment of David Martinez, minority shareholder and LLC manager due to failure in performance of his duties," including his status "as a manager of the respective companies." *See* ECF No. [117-1] at 2–3. In Martinez's view, this email proves he was never removed from Nexxt Gen and continues to be its COO. *See* ECF No. [117] at 2, 5. The Court does not share that view.

The Court starts with the observation that, while the document itself may have been new to Martinez, the information contained within this document was not. Indeed, the document reflects that Martinez was present and was a participant in the meeting at which he was terminated from Nuraxis LLC and its subsidiaries. Thus, Martinez knew this information, had the opportunity to testify about this meeting at the Hearing, but for whatever reason, chose not to testify about it to support his argument that he was removed from Nuraxis LLC and its subsidiaries, and not Nexxt Gen. In addition, this document fails to provide grounds for reconsideration because it is not clear enough to conclusively disprove the Court's original finding that Martinez was removed from Nexxt Gen. While this document purports to contain the minutes from a Nuraxis LLC executive

session and confirms that the board terminated Martinez from Nuraxis LLC and its subsidiaries, it does not disprove that Martinez was separately removed from Nexxt Gen. Both can be true. And given the undisputed testimony that Martinez was removed from Nexxt Gen in October 2021, resulting in his loss of all access to Nexxt Gen operations and platforms, including Nexxt Gen's "emails and financial accounts," *see* ECF No. [117] at 5 n.4, this document does not disprove that evidence.

Because the email does not, on its own, support a conclusion that Martinez was removed in October 2021 only from Nuraxis and it does not contain newly discovered information, it fails to meet the higher Rule 59/60 standard involving the availability of new evidence. *See Lehman Bros.*, 485 F. Supp. 2d at 1343; *Hornady*, 118 F.4th at 1381 (noting courts should not hesitate to revisit prior rulings if a movant can meet the significantly higher showing for reconsideration required under Rules 59(e) or 60(b)). Even under the less-stringent requirements of Rule 54(b), the Court does not find the email to be enough to warrant a change in its finding — which was supported by the Hearing testimony of all three witnesses — that Martinez was forced out of Nexxt Gen in October 2021. *See Hornady*, 118 F.4th at 1379–81. Accordingly, the Court **DECLINES** to reconsider its finding that Martinez was forced out of Nexxt Gen in October 2021, was no longer its COO, and was not due a salary based on his and Peyton's post-Joint Stipulation vote to pay themselves.

**B. Whether Grant violated the Joint Stipulation by Hiring Counsel/Paying Accountant**

Martinez contends Grant violated the Joint Stipulation both by hiring counsel to represent Nexxt Gen and by continuing to pay Nexxt Gen's accountant because he did not seek the approval of a "2/3d vote of Nexxt" Gen's shareholders. *See* ECF No. [117] at 6–7. He argues the Court erred by failing to find Grant in contempt for these actions. *See* ECF No. [117] at 2, 6–7. Once

again, the Court disagrees.

As to the hiring of counsel, Martinez notes Grant's Hearing testimony established Grant hired the law firm Bast Amron after the Joint Stipulation went into effect but that "the Report is silent on this issue." *See* ECF No. [117] at 6. Martinez is correct that the R&R does not address this issue, for good reason: as Grant points out in his Response, Martinez (and Peyton) never raised it. *See* ECF No. [164] at 4 & n.7. In fact, the Court explained in the R&R that "Martinez and Peyton did not make any assertions directed at" subsection 8(c)(xiv) of the Shareholder Agreement, which pertains to the "entry into any service contract or other agreement for debted goods or services in the amount of $2000.00 or more," in their briefs. *See* ECF No. [112] at 19. Instead, "at the Hearing, they argued that Grant violated it by hiring an accountant and paying her more than $19,600 as of August 2024." *See* ECF No. [112] at 19. Because Martinez could have raised this argument in his briefs or at the Hearing but did not, the Court declines to exercise its plenary power to consider it now. *See Hornady*, 118 F.4th at 1380.

As to Grant's continued payments[4] to Nexxt Gen's accountant, Martinez contends those violate the Joint Stipulation and are "grounds for contempt" because Grant made them "without seeking approval of the other shareholders." *See* ECF No. [117] at 2. He argues the Joint Stipulation required Grant to seek the approval of a "2/3d vote of Nexxt" Gen's shareholders, which he did not do. *See* ECF No. [117] at 6–7. But after considering the Hearing testimony, the Court found Grant's continued payments to the accountant did not violate subsection (a) of the Joint Stipulation as it modified subsection 8(c)(vi) of the Shareholder Agreement because none of

---

[4] Although Martinez does not explicitly take issue with the hiring of the accountant because, as the Court noted in the R&R, that occurred before the Joint Stipulation. *See* ECF No. [112] at 19 n.8. But to dispel any doubt, because Nexxt Gen contracted with the accountant before the Joint Stipulation, the Court **DECLINES** to modify its finding that Grant did not violate subsection 8(c)(xiv) of the Shareholder Agreement because he did not unilaterally "ent[er] into" that contract post-Joint Stipulation. *See* ECF No. [112] at 18–21.

11

those payments were for more than $5,000. *See* ECF No. [112] at 20 n.9. Martinez has not offered any contrary evidence in the Motion, and the Court does not find any such evidence in the record.

In fact, along with not supporting a conclusion that any of the payments were above $5,000 so as to trigger subsection 8(c)(vi) of the Shareholder Agreement, the evidence demonstrates that, unlike with Grant's salary, Martinez and Peyton did not vote post-Joint Stipulation to "unapprove" continued payments to the accountant. *See* ECF No. [112] at 14, 17. Indeed, there was no testimony from anyone at the Hearing about Martinez and Peyton conducting such a vote or disapproving continued payments. *See generally* Hr'g Tr., Sept. 6, 2024; Hr'g Tr. vols. 1 & 2, Sept. 9, 2024. Had there been such a vote, Martinez's argument might have carried more weight, because a vote of disapproval may have removed Grant's authorization to pay the accountant (at least as it relates to payment of more than $5,000). *See* ECF No. [112] at 14, 17; ECF No. [280-1] at 8. But because the accountant contract preexisted the Joint Stipulation (which means Grant did not need preauthorization to pay her), none of the payments were for more than $5,000, and there was no vote to disapprove continued payments, the Court **DECLINES** to reconsider its finding that Grant violated the Joint Stipulation by making those payments. *See Hornady*, 118 F.4th at 1379–81.

### C. Timing of $500 per day Contempt Fine and Whether Martinez is Entitled to Recover Costs and Attorney's Fees

Martinez contends the R&R failed to recommend "when the $500 fine against Grant will start accruing" or "the logistics as to this payment, *i.e.*, to whom." *See* ECF No. [117] at 2–3, 8. He argues "this Court should set a specific date as to when the fine should begin accruing." *See* ECF No. [117] at 2–3. In his Reply, Martinez suggests the $500 per day fine should accrue "from the date that the Court [entered its] Order approving the Joint Stipulation (namely July 2, 2024)" and should include interest. *See* ECF No. [169] at 3.

Although Martinez is correct that the R&R did not set forth the logistics of how the coercive sanction would accrue, the Court finds it unnecessary to make this finding given the procedural changes that occurred in this case following the issuance of the R&R. As the Parties are aware, Martinez timely objected to the R&R before Judge Bloom adopted it, *see* ECF No. [147], prompting Martinez to move to vacate the Order adopting the R&R, *see* ECF No. [122]. Before Judge Bloom could act on the Motion to Vacate, the Parties consented to Magistrate Judge jurisdiction over the entirety of this case. *See* ECF No. [135]; ECF No. [139]. Following that consent, the undersigned granted the Motion to Vacate and allowed the Parties to fully brief the Objections to the R&R (now, the Motion). *See* ECF No. [147]. The Motion became fully ripe on December 30, 2024, *see* ECF No. [169], and just one day later, before the Court ruled on the Motion, it granted Grant's pending and fully ripe Motion for Appointment of Receiver, ordering the parties to provide the names of proposed receivers, *see* ECF No. [170]. The Court thereafter appointed Maria Yip as the receiver, and in doing so, the Court gave her "all powers, authorities, rights and privileges heretofore possessed by the officers, managers, partners, or shareholders of Nexxt Gen under applicable state and federal law, as well as *by Nexxt Gen's Shareholders Agreement*." *See* ECF No. [204] at ¶4 (emphasis added). The Order further provided that "[n]o person holding or claiming any position of any sort with Nexxt Gen shall possess any authority to act by or on behalf of Nexxt Gen, unless so instructed by the Receiver." *See* ECF No. [204] at ¶5.

This Order, which gave the receiver all powers under the Shareholder Agreement, effectively mooted the Joint Stipulation and, therefore, mooted the contempt issue as Grant no longer had any ability to comply with the Joint Stipulation and could not consequently purge himself of the contempt sanction. *See E&C Copiers Exp. Imp. Corp. v. Arizas Fotocopiadoras S.A.S.*, No. 15-CV-21693, 2018 WL 6978631, at *4 (S.D. Fla. Dec. 28, 2018), *report and*

*recommendation adopted*, No. 15-CV-21693, 2019 WL 1112257 (S.D. Fla. Jan. 23, 2019) (quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442 (1911)) ("A contemnor is able to purge a finding of contempt and obtain his release by committing an affirmative act, and thus 'carries the keys of his prison in his own pocket,' because he can 'discharge himself at any moment by doing what he had previously refused to do.'")). Because "civil contempt is a conditional sanction [whereby] the person in contempt is afforded the opportunity to bring himself into compliance," *id.* (citing *Lance v. Plummer,* 353 F.2d 585, 592 (5th Cir. 1965), and the Supreme Court has explained that "once a 'command is obeyed, the future, indefinite, daily fines are purged," *id.* (quoting *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821 (1994)), the Court finds that, once it appointed the receiver, Grant had no ability to purge himself of the $500 per day fine.[5] Given the timing of the consent while the objections were pending and the appointment of a receiver, the Court concludes that the sanction in the form of a daily coercive fine would no longer serve its remedial purpose. And as a result, the Court declines to provide a further procedure for the imposition of the $500 daily fine or to otherwise enforce that fine at this time.

With that said, Martinez also notes the R&R "is silent regarding the request for attorney's fees and costs incurred by Martinez in bringing the Motion for Contempt" and argues that Grant should pay costs and attorney's fees for his contempt of Court. *See* ECF No. [117] at 8; *see* ECF No. [169] at 3 n.1 ("'[A]n award of attorney fees to the injured party in a civil contempt case is within the district court's discretion . . .'" (quoting *PlayNation Play Sys. v. Velex Corp.*, 939 F.3d 1205, 1214 (11th Cir. 2019)). He argues the Court should award those fees and costs because Martinez is "the prevailing party." *See* ECF No. [117] at 8. On this point, the Court agrees.

---

[5] The Court observes there is no information in the record as to whether Grant ever complied with the contempt findings in the R&R before the appointment of the receiver in an effort to purge himself of the daily fine before that date.

When a party violates a Court order and is found in contempt of Court, "district courts enjoy 'wide discretion to fashion an equitable remedy for [civil] contempt that is appropriate to the circumstances.'" *Id.* at *5 (quoting *E.E.O.C. v. Guardian Pools, Inc.*, 828 F.2d 1507, 1515 (11th Cir. 1987)). The purpose of such sanctions is to provide full remedial relief by either (1) "coercing the contemnor to comply with a court order," or (2) "compensating a party for losses suffered as a result of the contemptuous act." *Id.* (citing *Jove Engineering Inc. v. IRS,* 92 F.3d 1539, 1557 (11th Cir. 1996) (internal citations omitted)).

Here, the Court has already determined that the civil contempt sanction that was originally recommended to coerce Grant's compliance with the Joint Stipulation would no longer serve the purpose of providing Martinez and Peyton with any remedial relief. However, this does not mean that Grant can violate a Court Order without any repercussions. The balance of equities here favors granting alternative remedial relief in the form of compensation for Martinez's losses caused by Grant's contemptuous conduct — relief that Martinez originally requested in his Motion for Contempt but, as he correctly points out, the Court did not address in its R&R.[6]

For that reason, the Court reconsiders its prior ruling and finds that Martinez is entitled to recover from Grant the attorney's fees and costs associated with having to file the Motion for Contempt. That includes any attorney time spent travelling to and from the Hearing and participating in the Hearing, along with any attorney time briefing the issues and preparing for the Hearing. To the extent the Parties cannot agree on the amount of fees and costs that Martinez should be entitled to receive, Martinez shall file a motion that includes the requested billable rate,

---

[6] The Court does not reconsider this issue as it relates to Peyton as Peyton did not file any objections to the R&R or otherwise request any reconsideration of the R&R's omission of an award of attorney's fees and costs.

15

any information necessary for the Court to determine whether the hourly rate is reasonable in the Southern District of Florida, and any documentation in support of the number of billable hours expended, subject to the conditions set forth above. If the parties agree to the amount, Martinez may file an unopposed motion, advising the Court of the agreed upon amount of recoverable fees and costs. The foregoing **SHALL** be filed **no later than September 24, 2025.**

IV. **CONCLUSION**

For the reasons explained above, the Motion, **ECF No. [117]**, is **GRANTED in part and DENIED in part** as follows:

1. The Motion is **GRANTED** as it relates to Martinez's request for attorney's fees. The Court will enter a separate order setting the amount of the fee award once Martinez has filed the required motion.

2. The Motion is **DENIED** in all other respects.

**DONE** and **ORDERED** in Chambers in Miami, Florida on September 10, 2025.

_____
**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

Cc: All Counsel of Record